1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    JEREMY THOMAS STEVENS,

11                              Petitioner,

12          v.

13    DANIEL WHITE,

14                              Respondent.

CASE NO. 3:20-cv-05521-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  June 25, 2021

15

16          The District Court has referred this petition for a writ of habeas corpus to United States

17    Chief Magistrate Judge J. Richard Creatura.  Petitioner filed the petition pursuant to 28 U.S.C. §

18    2254.

19          In 2014, petitioner was found guilty by jury verdict in Kitsap County Superior Court of

20    three counts of second-degree rape of a child and one count of sexual exploitation of a minor.

21    Dkt. 8, Exhibit 12. In 2019, following a remand from the state appellate court, the trial court

22    entered an order amending the 2014 judgment and sentence, striking certain legal financial

23    obligations, conditions of the judgment and sentence, and the three-year term of community

24

REPORT AND RECOMMENDATION - 1

custody for the sexual exploitation of a minor charge. Dkt. 8, Exhibit 14. On June 2, 2020, petitioner signed this federal habeas petition ("the petition") raising three grounds for relief. Dkt. 3 at 5-8.

Respondent presents two alternative arguments. First, he argues the petition is untimely, and second, the petition should be denied on the merits. The Court recommends declining to reach the issue of timeliness without prejudice as unnecessary because the petition should be denied on the merits. With respect to the merits of the petition, the Court recommends that all three grounds for relief be denied as petitioner has not shown that state court's decision was contrary to, or an unreasonable application of, clearly established federal law. In his first ground for relief, petitioner alleges that his appellate counsel was ineffective. However, petitioner has not demonstrated prejudice based on appellate counsel's omission of the issues that were later raised on collateral review. In his second and third grounds for relief, petitioner alleges the jury instructions were defective, but he has not shown the alleged defective jury instructions violated due process rendering the entire trial unfair. Therefore, the undersigned recommends that the petition be denied and a certificate of appealability not be issued.

## BACKGROUND

On October 24, 2014, petitioner was found guilty by jury verdict in Kitsap County Superior Court of three counts of second-degree rape of a child and one count of sexual exploitation of a minor. Dkt. 8, Exhibit 12. Petitioner was sentenced to indeterminate life terms for each of the rape counts with concurrent 320-month minimum terms. *Id.* The 320-month minimum terms for the three rape counts represented an exceptional sentence based on the jury's findings that petitioner had engaged in an ongoing pattern of sexual abuse with the same victim.

1  Dkt. 8, Exhibit 13. The court imposed a 120-month determinate sentence for the charge of sexual

2  exploitation of a minor, to run concurrently with the other terms. *Id.*

3      On June 26, 2019, following a remand from the state appellate court, the trial court

4  entered an order amending the judgment and sentence, striking certain legal financial obligations,

5  conditions of the judgment and sentence, and the three-year term of community custody for the

6  charge of sexual exploitation of a minor, but otherwise leaving the duration of the original

7  sentence intact. Dkt. 8, Exhibit 14.

8      On June 2, 2020, petitioner signed his habeas corpus petition ("the petition"). Dkt. 3.

9  Petitioner raises three grounds for relief: (1) whether appellate counsel provided ineffective

10  assistance of counsel; (2) whether the trial court's jury instructions were defective; and (3)

11  whether the special verdict forms for the aggravating factors supporting the exceptional sentence

12  were erroneous. Dkt. 3 at 5-8.

13      On August 17, 2020, respondent filed an answer to the petition, asserting that the petition

14  was filed after the statute of limitations period expired. Dkt. 7, 8. Respondent maintains that the

15  petition is time-barred and should be dismissed with prejudice. Dkt. 7. In the alternative,

16  respondent argues that the petition should be denied on the merits. *Id.* Petitioner did not file a

17  traverse. *See id.*

18      On September 21, 2020, the Court ordered respondent to file a supplemental answer on or

19  before October 23, 2020, addressing whether petitioner's 2019 order amending the judgment and

20  sentence constituted a "new judgment" pursuant to Washington law and recent Ninth Circuit

21  case law. Dkt. 9 at 3-5. The Court also ordered respondent to address whether petitioner was

22  entitled to equitable tolling based on his allegations that due to the COVID-19 pandemic, there

23  have been restrictions on legal services in the prison system. Dkt. 9 at 4 (citing Dkt. 3 at 13-14).

24

1  Petitioner was permitted to file a supplemental response, limited to the issues raised by

2  respondent in the supplemental answer, no later than November 13, 2020. Dkt. 9 at 4. After

3  several extensions, petitioner filed his supplemental response on April 26, 2021. Dkt. 17.

4  **STATEMENT OF FACTS**

5  The Washington Court of Appeals summarized the facts of petitioner's crimes:

6       Stevens and SN's mother have been close friends since they were in junior
high school. Stevens has known SN since SN's birth on [redacted], 1999. Stevens
7  regularly socialized with SN's mother and stepfather. Stevens's father and
stepmother, Kerry and Sue Stevens, also were good friends with SN's mother and
8  stepfather and socialized with them.

9  *Birthday and Babysitting Incidents*

10       At some point, SN began babysitting Stevens's young daughter,
occasionally spending the night at Stevens's home when he worked late at night.
11  On the night of SN's birthday, Stevens engaged in sexual intercourse with her.

12       The State refers to this incident as the "birthday incident." A few weeks
later, SN babysat Stevens's daughter and spent the night. Stevens again had sexual
13  intercourse with SN. The State refers to this incident as the "babysitting incident."
There was conflicting testimony at trial when these incidents occurred. SN
14  explained that the first time they had sexual intercourse was on her 11th birthday,
which would have been [redacted], 2010. However, she also testified that the
15  incidents occurred when she was in the 6th grade. SN's counselor's testified that
SN turned 12 in the 6th grade on [redacted], 2011. In addition, SN's stepfather
16  testified that SN was 12 years old when she started babysitting for Stevens.

17  *Fair Incident*

18       On August 24, 2012, the evening before the Kitsap County Fair began, SN
and her friend SS (who was a year older than SN) stayed at Kerry and Sue's home.
19  Stevens came to the house after getting off work and the three of them stayed up
after Kerry and Sue went to bed. Stevens and the girls went outside and Stevens
20  performed oral sex on SN in the presence of SS.

21       Stevens later went upstairs to bed but came down three times, each time
explaining that he could not sleep because he was sexually aroused. The third time,
22  he told the girls they should "do stuff." Report of Proceedings (RP) at 316. SS and
SN then lay down in the family room and Stevens watched from the stairway as SN
23  touched SS's vagina. After they stopped, Stevens commented, "So you guys did
it." RP at 316. SN responded, "Yeah." RP at 316. According to SS, Stevens then

24

wanted SS to have sex with him and SN, but SS refused. The State refers to this incident as the "fair incident."

*Disclosure and Charges*

The allegations against Stevens came to light in December 2012 when SS told her mother that SN was having sex with Stevens.[1] SS's mother told the SN's mother and stepfather, who initially decided not to report the situation to the police. In April 2013, SN disclosed what had happened to a school counselor, who contacted law enforcement.

The State charged Stevens with two counts of first degree child rape (counts I and II) for the birthday and babysitting incidents based on SN being 11 years old. Alternatively, it charged Stevens with two counts of second degree child rape (counts III and IV) for these same incidents based on SN being 12 years old. The State charged him with two additional counts of second degree child rape for the fair incident (count V) and another incident referred to as the "pre- Thanksgiving incident" (count VI). The State also charged Stevens with attempted third degree child molestation (count VII) and sexual exploitation of a minor (count VIII), both against SS during the fair incident. Further, the State alleged that the four rapes of SN were part of an ongoing pattern of sexual abuse over a prolonged period of time.

*Trial and Sentence*

At trial, the State elected to rely on single acts for the specific counts. As a result, the trial court instructed the jury that it must unanimously agree that the State proved the specific act for each count. The trial court also instructed the jury that the acts supporting convictions on the various charges could occur over a two-year period. During closing argument, the State identified the specific incident that related to each charge. The trial court's jury instructions included special verdict forms for the jury to determine whether Stevens committed counts I through V as part of an ongoing pattern of sexual abuse. Stevens did not object to these special verdict forms.

The jury convicted Stevens of three counts of second degree child rape and one count of sexual exploitation of a minor. The jury acquitted Stevens of the two counts of first degree child rape, one count of second degree child rape (the pre-Thanksgiving incident), and attempted third degree child molestation.

The jury also found by special verdict that Stevens committed the second degree child rape offenses as part of an ongoing pattern of sexual abuse. Based on this aggravating circumstance, the trial court imposed an exceptional sentence.

Dkt. 8, Exhibit 18 at 2-4.

---

[1] According to SN, the last time she had sexual intercourse with Stevens was before Thanksgiving 2012 and stopped because Stevens went out of state to a trucking school. [Footnote by the Court of Appeals.]

1

**PROCEDURAL HISTORY**

2

**I.    Direct appeal**

3

Petitioner, through counsel, appealed his conviction to the Washington Court of Appeals.

4

On March 1, 2016, a three-judge panel affirmed his convictions. Dkt. 8, Exhibit 18. Petitioner

5

filed a petition for review with the Washington Supreme Court, and on June 29, 2016, the

6

Washington Supreme Court denied review without comment. Dkt. 8, Exhibit 19, 21, 22. On July

7

6, 2016, the Washington Court of Appeals issued its mandate. Dkt. 8, Exhibit 22.

8

**II.    Personal restraint petition**

9

On May 26, 2017, petitioner filed a personal restraint petition ("PRP"), *pro se*, with the

10

Washington Court of Appeals raising eight claims: (1) defense counsel provided ineffective

11

assistance by failing to advise him of favorable plea offers; (2), (3), (4) & (5) the sentencing

12

court erred in the imposition of certain conditions of community custody and legal financial

13

obligations and by failing to award credit for time served prior to sentencing; (6) appellate

14

counsel provided ineffective assistance on direct appeal by failing to raise the sentencing error

15

claims; (7) cumulative error rendered his trial unfair; and (8) the sentence for the sexual

16

exploitation count exceeds the maximum punishment authorized by law. Dkt. 8, Exhibit 23. In

17

response to the PRP, the State conceded error with respect to the claims challenging certain

18

community custody conditions and fees imposed by the sentencing court and the length of the

19

community custody term for the sexual exploitation of a minor count. Dkt. 8, Exhibit 25 at 27-

20

33, 36-37. The Washington Court of Appeals appointed counsel for petitioner related to his

21

argument that counsel failed to communicate the State's plea offers and failed to advise him of

22

the advantages of pleading guilty. Dkt. 8, Exhibit 27. The Washington Court of Appeals directed

23

24

1  the superior court to conduct an evidentiary hearing and make findings concerning the plea offers

2  and defense counsel's advice. Dkt. 8, Exhibit 27.

3  On January 8, 2019, a three-judge panel of the Washington Court of Appeals accepted the

4  State's concessions of error concerning petitioner's sentencing claims and remanded to the trial

5  court to strike or modify the community custody conditions, correct scrivener's errors, strike fees

6  ($500 fee to the Special Assault Unit, $100 fee to the Kitsap County Expert Witness Fund, and

7  $1,135 court-appointed attorney fee), and reduce the term of the community custody to zero for

8  the sexual exploitation of a minor charge. Dkt. 8, Exhibit 31 at 2-4. However, the Washington

9  Court of Appeals rejected the remaining claims. *Id.*

10  Petitioner, proceeding *pro se,* sought review by the Washington Supreme Court. The

11  commissioner of the Washington Supreme Court denied review of petitioner's remaining claims,

12  noting that the Washington Court of Appeals found that several of petitioner's claims had merit

13  and the PRP was granted and remanded to modify the judgment and sentence in the manner

14  specified. Dkt. 8, Exhibit 33. Petitioner did not move to modify the commissioner's ruling, and

15  the Washington Court of Appeals issued its certificate of finality on June 21, 2019. Dkt. 8,

16  Exhibit 34. On June 26, 2019, the superior court entered an order amending petitioner's

17  judgment and sentence in accordance with the Washington Court of Appeals' decision. Dkt. 8,

18  Exhibit 14. Pursuant to the directive of the Washington Court of Appeals, the 2019 order

19  amending the judgment and sentence struck or modified several community custody conditions,

20  struck the legal financial obligations, and struck the order of 36 months of community custody

21  for count 8 (sexual exploitation of a minor). *Id.*

22

23

24

1

**EVIDENTIARY HEARING**

2      The decision to hold an evidentiary hearing is committed to the Court's discretion.

3  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

4  hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

5  entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

6  available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

7  state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

8  entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

9  record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

10  court is not required to hold an evidentiary hearing." *Id. See Gandarela v. Johnson,* 286 F.3d

11  1080, 1086–87 (9th Cir. 2001) (holding that, because the affidavits proffered by the petitioner in

12  support of his actual innocence claim "speak for themselves" and petitioner "failed to show what

13  more an evidentiary hearing might reveal of material import on his assertion of actual

14  innocence," the district court had not abused its discretion in finding that an evidentiary hearing

15  was unnecessary), *cert. denied,* 537 U.S. 1117, (2003).

16      The Court finds that it is not necessary to hold an evidentiary hearing in this case because

17  the petition may be resolved on the existing state court record.

18

**DISCUSSION**

19  **A.  Timeliness**

20      First, Respondent argues the petition is untimely. Dkt. 7, 8, 10 (Respondent concedes that

21  the petition is exhausted.). Pursuant to the Antiterrorism and Effective Death Penalty Act

22  ("AEDPA"), which is codified at 28 U.S.C. § 2241 *et seq.*, a one-year statute of limitations

23  applies to federal habeas petitions. Section 2244(d)(1)(A) requires a prisoner to file a habeas

24

petition within one year of "the date on which the [state court] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." A direct review generally concludes, and the judgment becomes final either upon the expiration of the time for filing a petition for writ of certiorari with the United States Supreme Court, or when the Supreme Court rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). If during the limitations period a "properly filed application for state post-conviction or other collateral review . . . is pending," the one-year period is tolled. 28 U.S.C. § 2244(d)(2); *see Pace v. DiGulielmo*, 544 U.S. 480, 410 (2005). A direct review generally concludes, and the judgment becomes final either upon the expiration of the time for filing a petition for writ of certiorari with the United States Supreme Court, or when the Supreme Court rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

Respondent contends that based on the date of finality of petitioner's original judgment and sentence; the petition is untimely. Using that date, petitioner filed a direct appeal challenging his conviction and sentence, and the Washington State Supreme Court denied review on June 29, 2016. Dkt. 8, Exhibit 21. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court (*see* Dkt. 8), making his direct appeal final on September 27, 2016, the date the time for filing a petition for certiorari expired. *See* U.S. Sup. Ct. Rule 13 (a writ of certiorari must be filed within 90 days after entry of the judgment). The AEDPA limitations period began running the next day on September 28, 2016. *Corjasso v. Ayers*, 278 F.3d 874, 879 (9th Cir. 2002).

The AEDPA limitations period ran for 240 days, then, on May 26, 2017 -- the date petitioner filed his first PRP -- the limitations period tolled pursuant to 28 U.S.C. § 2244(d)(2). *See* Dkt. 8, Exhibit 23. The statute of limitations, therefore, stopped running from May 26, 2017

to June 21, 2019, the date the Washington Court of Appeals issued its certificate of finality and petitioner's PRP became final. *See Phongmanivan v. Haynes*, 195 Wash. 2d 309, 458 P.3d 767 (2020); *Corjasso v. Ayers*, 278 F.3d 874, 879 (9th Cir. 2002) (finding the statute of limitations remains tolled until the state collateral attack becomes final). When his PRP became final, petitioner had 125 days (for a total of 1 year) remaining to file his petition, or until approximately October 24, 2019. Using the date of the original judgment and sentence, the petition filed on June 2, 2020, would be untimely by 222 days. *See* Dkt. 1, 3.

On the other hand, the petition is not untimely if the date triggering the one-year limitations period is the date petitioner's conviction and sentence became final after the trial court entered the 2019 order amending judgment and sentence. In that scenario, petitioner's 2019 order amending judgment and sentence was filed by the clerk on June 26, 2019, and he did not file a direct appeal challenging 2019 order amending judgment and sentence. *See* Dkt. 8, Exhibit 14. Petitioner's judgment and sentence would become final on July 26, 2019, the date the time for filing a direct appeal expired. *See* Wash. RAP 5.2(a) (notice of appeal must be filed in the trial court 30 days after the entry of the decision of the trial court); *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001) (If a petitioner fails to petition the state's highest court for review, the conviction becomes final when the time for seeking such review elapses); 28 U.S.C. § 2244(d)(1)(A).The AEDPA limitations period would then begin running the following day, on July 27, 2019. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002). Using the 2019 order amending judgment and sentence as the relevant starting point, the June 2020 petition would be timely filed. *See* Dkt. 1.

Respondent argues that the 2019 order amending the judgment and sentence is not the equivalent of a new judgment and sentence, and that petitioner remains in custody under the original 2014 judgment and sentence. Dkt. 7 at 14-16 (citing *Smith v. Williams*, 871 F.3d 684

(9th Cir. 2019); *Magwood v. Patterson*, 561 U.S. 320, 341-42 (2010); *Gonzalez v. Sherman*, 873 F.3d 763, 769-70 (9th Cir. 2017)); Dkt. 10 at 2-6 (supplemental answer) (citing *Colbert v. Haynes*, 954 F.3d 1232 (9th Cir. 2020) and Washington state law)).

With respect to second and successive petitions, the Supreme Court has held that "where . . . there is a 'new judgment intervening between the two habeas petitions,' [the petition] challenging the resulting new judgment is not 'second or successive' at all." *Magwood v. Patterson*, 561 U.S. 320, 341-42 (2010). In 2017, the Ninth Circuit extended *Magwood*, and applied it to the federal statute of limitations analysis. *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017). The Ninth Circuit rejected the state's argument that the statute of limitations runs from the original judgment rather than the amended judgment. *See id.* at 687-88. The Ninth Circuit concluded that the amended judgment "started a new one-year statute of limitations," rendering the federal petition timely. *Id.* at 689. On the other hand, the Ninth Circuit held in *Gonzalez v. Sherman,* 873 F.3d 763, 769 (9th Cir. 2017) that when an amended judgment corrects a scrivener's error, it does not change the underlying judgment, but "only the written record that erroneously reflects that judgment."

Since *Magwood,* lower courts have had to decide how significant the change to a judgment must be in order to create a "new judgment." In doing so, courts look to applicable state law to determine whether a sentencing change made by the state court created a new sentencing judgment. Numerous district courts that applied *Smith*, 871 F.3d 684, found that the federal one-year limitation period under 28 U.S.C.A. § 2244(d)(1)(A) started to run after the expiration of the time to file a direct appeal from petitioner's amended judgment of conviction. *See Duda v. Neven,* 2017 WL 4350662 at *2 (D. Nev. Sept. 29, 2017) (finding that the federal one-year limitation period did not begin to run until the expiration of the time period to file a direct appeal from petitioner's amended judgment of conviction); *Gayler v. Neven,* 2017 WL 4250049 at *2

1    (D. Nev. Sept. 20, 2017), *modified on reconsideration,* 2017 WL 6566100 (D. Nev. Dec. 22,

2    2017) (finding that the federal limitation period did not begin to run until the time period to file a

3    direct appeal expired following the entry of petitioner's second amended judgment of

4    conviction).

5         Recently, in *Colbert v. Haynes,* 954 F.3d 1232, 1236 (9th Cir. 2020), the Ninth Circuit

6    applied Washington law to the issue of a "new judgment" in the context of a successive petition.

7    The court distinguished between "sentencing errors correctible through ministerial action" and

8    those that arise from "critical stages of a criminal proceeding and . . . involve discretionary

9    decision-making." *Id.* (citing *State v. Ramos*, 171 Wn.2d 46 (2011) (en banc) and *State v.*

10   *Kilgore*, 167 Wn.2d 28 (2009) (en banc)). The court suggested that under Washington law only

11   the latter would render a prior judgment invalid such that a corrected judgment would constitute

12   a "new, intervening judgment." *Id.* at 1236-37; *Clayton v. Biter,* 868 F.3d 840 (9th Cir. 2017)

13   ("We look to state law to determine what constitutes a new or intervening judgment."). Under

14   Washington law, "[o]nly if the trial court, on remand, exercised its independent judgment,

15   reviewed and ruled again on such issue does it become an appealable question." *State v. Kilgore*,

16   167 Wash. 2d 28, 37, 44 (2009) (quoting *State v. Barberio*, 121 Wash. 2d 48, 50, 846 P.2d 519

17   (1993)); *In re Sorenson*, 200 Wash. App. 692, 696, 700 (2017) (noting that *Kilgore* established

18   that when a judgment is final "depended on whether the trial court on remand had exercised

19   independent judgment," and that no appealable issues remained if the trial court merely corrected

20   the original judgment).

21         Here, in 2019, following a remand from the state appellate court, the trial court entered an

22   order amending the judgment and sentence, striking certain legal financial obligations,

23   conditions of the judgment and sentence, and the three-year term of community custody for the

24

1  sexual exploitation of a minor charge. Dkt. 8, Exhibit 14. In the PRP proceedings and on remand,

2  the State conceded to the errors. *See id.,* Dkt. 8, Exhibit 31.

3      Respondent contends that because petitioner is challenging his underlying conviction and

4  sentence, that should be the starting point for the statute of limitations analysis – or the date that

5  the original judgment became final after petitioner's direct appeal and PRP. Dkt. 7, 10.

6  Respondent also argues that the Court should not apply the 2019 order amending judgment and

7  sentence because petitioner's total prison term did not change as a result of the ruling. *See id.*

8      However, respondent has not cited to, and the Court is not aware of, any authority

9  applying the reasoning in *Magwood,* the progeny of cases that followed *Magwood,* or relevant

10  Washington state law and finding that finding that an order amending judgment and sentence

11  which the State has conceded to errors on remand does not restart the federal limitations period.

12  Rather, courts in this circuit after *Smith* have found that judgments amended pursuant to a

13  resentencing create a new limitations period. *See, e.g., Gonzalez v. Sherman*, 873 F.3d 763, 769

14  (9th Cir. 2017) ("[A] change to a defendant's sentence," such as a change to the calculation of

15  presentence credits, "is a change to his judgment."); *Marquez v. McDaniel*, 729 F. App'x 583,

16  584 (9th Cir. 2018) (determining that an amended judgment removing a sentencing enhancement

17  reset the limitations period).

18      Further, while the record does not reflect that a resentencing hearing was held on remand,

19  it appears that the State's concession of the errors resulted in the trial court's lack of independent

20  discretion and made it unnecessary to hold such a resentencing hearing. *See* Dkt. 8.Exhibit 14.

21  Moreover, it is not clear from the record clear whether the judgment by which petitioner is in

22  custody is the original or amended judgment. *See* Dkt. 8, Exhibit 14. It would appear that at least

23  for the purposes of petitioner's community custody portion of his sentence, petitioner would be

24  in custody under the amended judgment based on the removal of several of the conditions. Based

on the foregoing, it is unclear whether the amendment is more analogous to ministerial changes or a scrivener's error, or a new, intervening judgment, and the Court is not persuaded that the petition is untimely. *Compare Turner v. Baker*, 912 F.3d 1236 (9th Cir.), *cert. denied,* 140 S. Ct. 306 (2019) (recognizing that an order correcting a scrivener's error in a judgment has no legal consequences and therefore does not constitute a new judgment, while an order that changes the duration of a prisoner's confinement does constitute a new judgment) *with Marquez v. McDaniel*, 729 F. App'x 583, 584 (9th Cir. 2018) (finding a petition timely based on the date of the corrected judgment when the corrected judgment "effected a change in [the petitioner's] sentence").

The Supreme Court repeatedly has declined to construe the federal habeas statutes as a "gotcha" trap for the unwary. *See, e.g., Rose v. Lundy*, 455 U.S. 509, 520 (1982); *see also Rhines v. Weber*, 544 U.S. 269, 279 (2005) (Stevens, J., concurring). Further, the Court, as a matter of policy, prefers to decide cases on the merits of the claims, rather than procedural technicalities, and respondent has also briefed the merits of the petition, as an alternative basis for denial of the petition. Accordingly, based on the uncertainty in the record and unsettled case law regarding respondent's timeliness argument, the Court recommends declining to reach the issue of timeliness without prejudice as unnecessary to this decision because the petition should be denied on the merits, *see supra.* Based on the foregoing, the Court also declines to decide whether equitable tolling applies to the petition.

**B.  Merits**

Petitioner raises three grounds for relief: (1) whether appellate counsel performed deficiently by failing to raise on direct appeal the sentencing and community custody conditions issues that petitioner later presented in his PRP; (2) the trial court's "to-convict" jury instructions were defective because they included a date range, rather than specifying the dates on which the

crimes allegedly occurred and failed to ensure that jury unanimity for specific acts; and (3) the special verdict forms for the aggravating factors supporting the exceptional sentence erroneously omitted the statutory language. Dkt. 3. Respondent maintains that the state courts' adjudication of the grounds raised in the petition was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 7.

1. Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court

1    either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

2    where it should not apply or unreasonably refuses to extend that principle to a new context where

3    it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

4    U.S. at 407).

5         The AEDPA requires federal habeas courts to presume the correctness of state courts'

6    factual findings unless applicants rebut this presumption with "clear and convincing evidence."

7    28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to

8    the record that was before the state court that adjudicated the claim on the merits." *Cullen v.*

9    *Pinholster*, 563 U.S. 170, 180-81 (2011).

10        2.   Ineffective assistance of appellate counsel (Ground One)

11         Petitioner contends that appellate counsel was ineffective because during his direct

12    appeal, counsel failed to raise sentencing and conditions of release issues. Dkt. 3 at 5. Petitioner

13    argues that this shows that his counsel was not diligent in his job. *Id.* Petitioner concedes that he

14    raised these arguments in a later proceeding, his PRP. *Id.*

15         Under the Due Process Clause of the Fourteenth Amendment, criminal defendants are

16    entitled to the assistance of counsel on criminal appeals as of right. *Douglas v. California*, 372

17    U.S. 353 (1963). The due process right to appellate counsel also includes the right to the

18    effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 397 (1985). The proper

19    standard for evaluating petitioner's claim that appellate counsel was ineffective is that enunciated

20    in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Smith v. Murray,* 477 U.S. 527, 535-536

21    (1986) (applying *Strickland* to a claim of attorney error on appeal). Petitioner must show that (1)

22    his counsel was objectively unreasonable, *see Strickland,* 466 U.S. at 687-91, in failing to find

23    arguable issues to appeal – that counsel unreasonably failed to discover nonfrivolous issues and

24

REPORT AND RECOMMENDATION - 16

1    to file a merits brief raising them – and (2) reasonable probability that, but for counsel's failure

2    to raise the issue, petitioner would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259,

3    285-86 (2000). If trial counsel's performance was not objectively unreasonable or did not

4    prejudice petitioner, then appellate counsel did not act unreasonably in failing to raise a meritless

5    claim of ineffective assistance of counsel and petitioner is not prejudiced by appellate counsel's

6    omission. *Moormann v. Ryan,* 628 F.3d 1102, 1107 (9th Cir. 2010).

7           Here, the Washington Court of Appeals rejected petitioner's claim finding that petitioner

8    had received all the relief that he would have been entitled to if the omitted claims been raised on

9    direct appeal:

10          Stevens argues that he received ineffective assistance of appellate counsel for not
           raising the above issues in his direct appeal. But because we have addressed the
11          merits of those issues and granted relief where appropriate, he does not show that
           he was actually and substantially prejudiced by his appellate counsel's failure to
12          raise these issues on appeal. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868
           P.2d 835, 870 P.2d 964 (1994).

13   Dkt. 8, Exhibit 31 at 3. On discretionary review, the Commissioner of the Washington Supreme

14   Court agreed with the Washington Court of Appeals. Dkt. 8, Exhibit 33 at 2.

15          Here, because the Washington Court of Appeals corrected the errors raised that petitioner

16   alleges were not raised by counsel on appeal, petitioner has not demonstrated any prejudice and

17   the effectiveness of appellate counsel claim is moot.  Petitioner has received the relief he

18   requested by raising the issues in his PRP, and the resulting decision on petitioner's PRP cured

19   any such performance. Thus, petitioner fails to show a reasonable probability that, but for

20   counsel's purported unprofessional errors, the result of the proceeding would have been different.

21   *Strickland,* 466 U.S. at 687–88. Although the petitioner must prove both elements, a court may

22   reject his claim upon finding either that counsel's performance was reasonable or that the claimed

23   error was not prejudicial. *Id.* at 697.

24

1    Thus, petitioner has failed to demonstrate that the state appellate court's rejection of this

2    claim was contrary to, or an unreasonable application of, established federal law as determined

3    by the United States Supreme Court, or was an unreasonable determination of the facts in light of

4    the evidence presented. Thus, the Court recommends that this claim be denied.

5         3.   Improper Jury Instructions and Special Verdict Form (Grounds Two and Three)

6    In ground two, petitioner argues that the trial court's "to-convict" jury instructions were

7    defective.  Dkt. 3 at 7. In ground three, petitioner argues that the special verdict forms for the

8    aggravating factors supporting the exceptional sentence erroneously omitted the statutory

9    language. Dkt. 3 at 8.

10    "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for

11    habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). In a habeas case, the question before

12    the Court is "whether the ailing [jury] instruction by itself so infected the entire trial that the

13    resulting conviction violates due process." *Id*. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147

14    (1973)). "Where, for example, a jury instruction relieves the prosecution of its burden in proving

15    every element of the offense beyond a reasonable doubt, the jury instruction violates due process."

16    *Roettgen v. Ryan*, 639 F. Supp. 2d 1053, 1066 (C.D. Cal. 2009) (citing *Middleton v. McNeil,* 541

17    U.S. 433, 437 (2004)). If the Court is reviewing an ambiguous instruction, the inquiry is "'whether

18    there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that

19    violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). The

20    challenged jury instruction "must be considered in the context of the instructions as a whole and

21    the trial record." *Estelle*, 502 U.S. at 72.

22

23

24

1          *a.*  *"To-convict" Jury Instructions (Ground Two)*

2          Petitioner argues that the trial court gave confusing jury instructions that violated his

3    right to due process because the instructions included a date range, rather than specifying the

4    dates on which the crimes allegedly occurred and failed to ensure that jury unanimity for specific

5    acts. Dkt. 3 at 7.

6          Here, the trial court instructed the jurors that each count rested on evidence of a separate

7    act and that the jury must unanimously agree that a specific act was proved:

8                In alleging the defendant committed the crimes of Rape of a Child in the
     First Degree and/or Rape of a Child in the Second Degree, the State relies upon
9    evidence regarding a single act constituting each count of Rape of a Child in the
     First Degree and/or Rape of a Child in the Second Degree. To convict the defendant
10   on any count of Rape of a Child in the First Degree and/or Rape of a Child in the
     Second Degree you must unanimously agree that this specific act was proved.

11
     Dkt. 8, Exhibit 9 at 9 (Instruction 6). The court also instructed the jury regarding the elements of
12
     second degree rape of a child, as charged in counts 3, 4, 5, and 6. *Id*. at 16-19 (Instructions 13-
13
     16). The jurors were instructed, in part, that to convict petitioner of second degree rape of a
14
     child, "on or between April 28, 2011 and April 27, 2013, the defendant had sexual intercourse
15
     with [SN]." *Id.*
16
           During the closing argument, the state specified the particular criminal acts that it was
17
     relying on for conviction for each count. *See* Dkt. 8, Exhibit 25 at 932-934.[2] The prosecutor
18
     explained that there were four distinct instances of sexual intercourse between petitioner and SN
19
     that were charged as offenses in counts 1-6: the "birthday incident," the "babysitting incident" a
20
     few weeks later, the "fair incident" occurring just before the Kitsap County Fair in August 2012,
21
     and the "pre- Thanksgiving incident" in November 2012. *Id.*
22

23   _____

24          [2] The page numbers related to the evidence in Exhibits 5 and 25 reflect the CM-ECF page numbers for ease
     of reference.

REPORT AND RECOMMENDATION - 19

So we're actually talking about four instances of sexual conduct, four specific instances. And what I'm asking you is if you find—first you will make a determination about whether each of these instances occurred; okay? If you decide that one of these instances occurred, the birthday incident or the babysitting incident, the next decision you have to make is what age [SN] was when the first two incidents occurred, either the birthday incident or the baby-sitting incident, okay, because there will be argument about her age at the time of that incident; okay? And that will shape your decision in this case, if you decide those incidents occurred, about which crime the Defendant committed. And that is depending on [SN]'s age at the time of the crime[.]
. . .
So we're talking about four specific acts. Two of those acts have different instructions on them, and they rely upon you making a determination about [SN]'s age at the time of those events. So that's a decision you have to make.

Dkt. 8, Exhibit 25 at 932-934.

The prosecutor then explained that counts 1 and 2 (first-degree rape of a child) and counts 3 and 4 (second-degree rape of a child) were alternatives and their findings were based on the age of SN at the time of the incident. If the jurors found that SN was 11 years of age at the time of the first two incidents (the "birthday" and "babysitting" incidents), then they could convict petitioner of the counts of first-degree rape of a child (counts 1 and 2). However, if the jurors found that SN was 12 years old at the time, the crime of second-degree rape of a child would apply (counts 3 and 4). *Id*. at 934-35.

These four incidents here, okay, these are separate and distinct defined incidents. I want to be clear about what they pertain to. The birthday incident pertains to Count 1 or Count 3. And again, that's based—if you decide unanimously that that incident occurred, okay, and if you decide unanimously that [SN] was 11 at the time of that incident, you will convict on Count 1. If you decide that it occurred, and you decide unanimously that [SN] was older at the time of the incident, she was 12, you will convict on Count 3. So it's 1 or 3. The baby-sitting incident pertains to Count 2 or Count 4, same analysis for that. The fair incident, that pertains to Count 5. Pre-Thanksgiving incident, that also pertains to Count 5. And this is important, "or." Remember that on these. It's Count 1 or 3 for the birthday incident, Count 2 or 4 for the baby-sitting incident, based on what age you find [SN] was at the time of the offense.

1   *Id.* at 952-53.  The prosecutor acknowledged that he had misspoken, and immediately clarified

2   which incidents were charged in counts 5 and 6: "The fair incident pertains to Count 5. The pre-

3   Thanksgiving incident pertains to Count 6, just to clarify that." *Id.* at 953-54.

4           Shortly after beginning deliberations, the jury asked a question to the court: "Do counts 3,

5   4, 5, and 6 correspond to a specific incidents and/or date? i.e., birthday, babysitting, fair, and pre-

6   Thanksgiving?" Dkt. 8, Exhibit 5 at 724. The parties and the court agreed, pursuant to the State's

7   election during closing argument, that the correct answer to the jury's question was "Yes." *Id.*

8   The court therefore responded to the question with a one-word "yes" response. *Id.*; *see also*

9   Exhibit 5A (written jury question and response). Two days later during deliberations, the jury

10  asked, "Does count 3 refer to the [redacted], 2011 birthday only?" Dkt. 8, Exhibit 7 at 742-43.

11  The trial court instructed the jury to refer to its prior answer. *Id.*

12          In determining the trial court properly gave the "to-convict" jury instruction, the state

13  court of appeals found:

14              [T]he State very clearly told that jury during closing argument that the
                birthday incident pertained to count I and count III, the babysitting incident
15              pertained to count II and count IV, and the fair incident pertained to count V.[3]
                Further, the trial court answered the jury's questions, indicating that each count
16              related to a separate incident. We presume the jury followed this instruction absent
                evidence to the contrary. *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d
17              853 (2011). Stevens presents no such evidence.

18  Dkt. 8, Exhibit 18 at 10.

19          Petitioner argues that the jury instructions were confusing and defective, thus violating

20  his due process rights. Dkt. 3. However, "not every ambiguity, inconsistency, or deficiency in a

21  jury instruction rises to the level of a due process violation. The question is 'whether the ailing

22  _____

23  [3] Because the State elected and chose to argue that each count pertained to a specific incident, the unanimity
     problem addressed in *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), does not apply here. *See State v.*

24  *Carson*, 184 Wn.2d 207, 228-29, 357 P.3d 1064 (2015) (State's election of specific acts for each count makes a
     *Petrich* instruction unnecessary). [footnote original]

1    instruction . . . so infected the entire trial that the resulting conviction violates due process.'"

2    *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). *See Estelle v. McGuire*, 502 U.S. at 72 & n.4

3    (when deciding whether an arguably ambiguous instruction is erroneous, the appropriate inquiry

4    is "whether there is a 'reasonable likelihood' that the jury has applied the challenged instruction

5    in a way that violates the Constitution."). A habeas petitioner whose claim involves a failure to

6    give a particular instruction bears an "especially heavy burden." *Villafuerte v. Stewart*, 111 F.3d

7    616, 624 (9th Cir. 1997).

8         A jury instruction must not be construed in isolation, but rather, in the context of all other

9    jury instructions and the trial record as a whole. *Estelle*, 502 U.S. at 72. Here, the record reflects

10   that the State clearly stated that a specific incident related to each count of child rape. *See* Dkt. 8,

11   Exhibit 5, 25. The trial court also answered the jury's questions twice, indicating that each count

12   related to a separate incident. Dkt. 8, Exhibit 5, 7, 25. Had the court's explanation not been

13   helpful to the jury, the jurors could have requested further clarification. The clarification was not

14   confusing, and a reasonable jury would understand the distinction between each count and the

15   related incident. And had the trial court answered the second question related to the 2011

16   incident with a yes or no answer, it could have been construed as a comment on the evidence,

17   and thereby suggesting that was the factual scenario the trial court thought had occurred.

18         In addition, as argued by respondent, the jury delivered mixed verdicts, acquitting

19   petitioner on counts 1 and 2, convicting on counts 3, 4, and 5, acquitting on counts 6 and 7 (the

20   attempted third-degree child molestation charge), and convicting on count 8. Dkt. 8, Exhibit 10

21   (verdict forms). Because the jury only returned guilty verdicts on counts 3 and 4, this indicates

22   that the jurors understood what each count represented. For instance, if the jury had returned

23   guilty verdicts on counts 1, 2, 3, and 4, that would have indicated that the jury did not understand

24

that the counts were alternatives and that the jury was confused about what each of the charges represented. However, this was not the case.

Considering the trial evidence and jury instructions as a whole, there is nothing in the record to suggest that the jury was not able to follow the court's instructions regarding the specific instances underlying each charge. Accordingly, petitioner has not established that any error in failing to identify specific dates in the jury instructions "so infected" the trial "that the resulting conviction violates due process." *See Estelle,* 502 U.S. at 72. Therefore, the Court concludes that the state court's determination that petitioner's rights were not violated based on the "to-convict" jury instructions was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court finds that Ground Two should be denied.

      *b.  Exceptional Sentence Jury Instructions (Ground Three)*

Petitioner next argues that the exceptional sentence for aggravating factors was not proven during trial because the trial court erroneously omitted statutory language for counts 3, 4, and 5 that any abuse needed to extend over a "prolonged period of time." Dkt. 3 at 8. Petitioner argues that the omission of this phrase relieved the State of its burden of proof as to the exceptional circumstance under RCW § 9.94A.535(3)(g). *See id.*

The special verdict forms each provided the following with respect to the second-degree rape counts, counts 3, 4, and 5:

> *This special verdict is to be answered only if the jury finds the defendant guilty of Rape of a Child in the Second Degree as charged in Count [III, IV, or V].*

> We, the jury, return a special verdict by answering as follows—

> QUESTION: Did the defendant, JEREMY THOMAS STEVENS, engage in an ongoing pattern of sexual abuse with the victim [SN]?

> ANSWER: _____ (Write "yes" or "no")

1 | Dkt. 8, Exhibit 11 (special verdict forms) (italics in original).

2 |      The trial court also provided the jurors with the precise definitions of the statute's terms:

3 | "An 'ongoing pattern of sexual abuse' means multiple incidents of abuse over a prolonged period

4 | of time. The term 'prolonged period of time' means more than a few weeks." *See* Dkt. 8, Exhibit

5 | 9 at 32 (Instruction 29). The jurors were instructed that all of the court's instructions were

6 | important and they must consider the instructions as a whole. *Id*. at 4 (Instruction 1).

7 |      Petitioner raised this challenge to the special verdict forms on direct appeal to the

8 | Washington Court of Appeals. Dkt. 8, Exhibit 15 at 19-21. On direct appeal, the Washington

9 | Court of Appeals found that petitioner's the claim was without merit:

10 |      [W]e review jury instructions in the context of the instructions as a whole.

11 | *State v. Saunders*, 177 Wn.App. 259, 270, 311 P.3d 601 (2013). Here, the trial court instructed the jury that "[a]n 'ongoing pattern of sexual abuse' means multiple

12 | incidents of abuse over a prolonged period of time. The phrase "'prolonged period of time' means more than a few weeks." CP at 197. Therefore, the special verdict

13 | forms necessarily incorporated the "multiple incidents over a prolonged period of time" requirement.

14 |      The trial court's aggravating factor instruction and the special verdict forms made it clear that in order to find an "ongoing pattern of sexual abuse" the jury was

15 | required to find "multiple incidents of abuse over a prolonged period of time." Accordingly, we hold that the trial court's special verdict forms did not relieve the

16 | State of its burden of proof.

17 | Dkt. 8, Exhibit 18 at 11-12. The appellate court also observed that petitioner did not object to the

18 | language used in the court's special verdict forms. *Id*. at 11 n. 4.

19 |      Petitioner has not shown that the special verdict forms lowered the state's burden of

20 | proof, violating due process. The trial court provided the jurors with the definitions of the

21 | statute's terms, Dkt. 8, Exhibit 9 at 32, the jurors were instructed that all of the instructions were

22 | important, and that they must consider the instructions as a whole, *id.* at 4. Based on the

23 | foregoing, petitioner has not demonstrated any reasonable likelihood that the jury misunderstood

24 |

the requirement that petitioner's sexual abuse of SN occurred over a prolonged period of time. Petitioner's due process claim is therefore without merit because other instructions made definition of "a prolonged period of time" clear. Thus, this Court cannot find that there is a reasonable likelihood that the jury applied the instruction in such a way that the state was relieved of proving every element beyond a reasonable doubt or that the entire trial was so infected resulting in a conviction that violates due process. *See Waddington v. Sarausad,* 555 U.S. 179, 190 (2009); *See Middleton v. McNeil,* 541 U.S. 433, 437 (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."). The state court's rejection of petitioner's jury instruction claim was neither contrary to, nor an unreasonable application of clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1). Accordingly, the Court finds that ground three should be denied.

## CERTIFICATE OF APPEALABILITY

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

1

## CONCLUSION

2     The Court recommends declining to reach the issue of timeliness without prejudice as

3 unnecessary and denying the petition with prejudice on the merits. The Court finds that it is not

4 necessary to hold an evidentiary hearing and petitioner is not entitled to a certificate of

5 appealability.

6     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

8 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

9 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

10 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

11 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

12 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

13 25, 2021 as noted in the caption.

14     Dated this 7th day of June, 2021.

15

16

J. Richard Creatura

17 Chief United States Magistrate Judge

18

19

20

21

22

23

24